Citation Nr: 1761221 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-34 328 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to a disability rating in excess of 50 percent prior to August 29, 2007, for posttraumatic stress disorder (PTSD). 

2. Entitlement to a total disability rating due to individual unemployability (TDIU) for the period prior to August 29, 2007.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel



INTRODUCTION

The Veteran, who is the appellant, served on active duty from August 1967 to August 1969. He received the Combat Infantryman Badge, Air Medal and Bronze Star Medal, among other decorations, for this service.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2004 rating decision of a Regional Office (RO) of the Department of Veterans Affairs (VA) in Newark, New Jersey. 

This issue was previously remanded by the Board in February 2013 and again in August 2014 for additional development. The required development has been completed and this case is appropriately before the Board. See Stegall v. West, 11 Vet. App. 268 (1998). 

In a March 2016 decision, the Board denied a disability rating in excess of 50 percent prior to August 29, 2007, for PTSD. The Veteran subsequently appealed that determination to the U.S. Court of Appeals for Veterans Claims (Court). In a July 2017 memorandum decision, the Court vacated the Board's March 2016 decision and remanded this issue back to the Board for readjudication. 

The Board's March 2016 decision also remanded issues of entitlement to increased ratings for peripheral neuropathy of the bilateral legs, a right knee disability and diabetes mellitus for the issuance of a Statement of the Case (SOC) pursuant to Manlincon v. West, 12 Vet. App. 238 (1999) and remanded the issue of entitlement to TDIU as it was intertwined with the other issues. A SSOC on all issues was provided in July 2017 and subsequently a SOC was issued in September 2017 on the issues of the right knee, diabetes mellitus and peripheral neuropathy of the bilateral legs. The Veteran has not timely perfected his appeal by filing a Substantive Appeal on the issues of the peripheral neuropathy, right knee, and diabetes mellitus. 38 C.F.R. § 20.302(b). Consequently, those matters are not before the Board.

The issue of entitlement to TDIU prior to August 29, 1007, however, is still on appeal as it is part and parcel of the claim for an increased evaluation for PTSD. See Rice v. Shinseki, 22 Vet. App. 447 2009). Entitlement to TDIU is once again remanded to the AOJ for further development. 


FINDING OF FACT

Prior to August 29, 2007, the Veteran's PTSD resulted in occupational and social impairment with deficiencies in most areas due to such symptoms as irritability and anger, depression, social isolation, and severe but not total impairment in establishing and maintaining effective work and social relationships. 


CONCLUSION OF LAW

The criteria for an evaluation of 70 percent and no higher prior to August 29, 2007, for PTSD have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2017). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). There is no indication in this record of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015). 

Regarding the duty to assist in this case, VA has secured or attempted to secure all relevant documentation required by the VCAA or identified by the Veteran. The Veteran's service treatment records, VA treatment records, and any identified private treatment records have all been obtained. The Veteran was afforded a VA medical examination for the disability on appeal. The VA and private medical evidence contains sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disability on appeal and is adequate for purposes of this appeal, as it is competent evidence pertaining to the existence and etiology of the claimed current disability sufficient to decide the claim. 

The Board is not aware of, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. All identified and available relevant documentation has been secured and all relevant facts have been developed. There remains no question as to the substantial completeness of the claims. 38 U.S.C. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). For these reasons, the Board finds that the VCAA duties to notify and to assist have been met. 

The Veteran seeks an increased rating prior to August 29, 2007, for a service-connected psychiatric disability, PTSD. He contends the impairment resulting from this disability is more severe than is rated by VA, and an increased rating is warranted. Currently, a 50 percent initial disability rating has been awarded for the period prior to August 29, 2007. As a 100 percent (total) rating has been awarded effective August 29, 2007, that period is not on appeal before the Board. 

Disability evaluations are based upon the average impairment of earning capacity as contemplated by the schedule for rating disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). In adjudicating increased rating claims, the level of disability in all periods since the effective date of the grant of service connection must be taken into account, to include the possibility that a staged rating may be assigned. See Fenderson v. West, 12 Vet. App. 119 (1998); Hart v. Mansfield, 21 Vet. App. 505 (2007). As such, the Board will consider whether staged ratings are appropriate to the pending appeals. In cases in which a reasonable doubt arises as to the appropriate degree of disability to be assigned, such doubt shall be resolved in favor of the Veteran. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. 

PTSD is rated under Diagnostic Code 9411, and utilizes the General Rating Formula for Mental Disorders. Under this Code, a 50 percent rating is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty understanding complex commands; impairment of short and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent evaluation for a psychiatric disability is warranted for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

In evaluating psychiatric disorders, the Board is mindful that the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve only as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

In Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that VA "intended the General Rating Formula to provide a regulatory framework for placing veterans on a disability spectrum based upon their objectively observable symptoms." The Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas."

In the present case, the Veteran was afforded a VA examination in September 2003. Subjective symptoms reported by the Veteran included nightmares, hypervigilance, and a hyperstartle response. He reported that these symptoms occurred once a week and seemed to be mild to moderate in nature. At the time of the examination, it was noted that the Veteran was a retired postal clerk. On mental status evaluation, he was dressed casually and was cooperative. His mood was neutral, his affect was appropriate and his speech was neutral. There were no perceptual problems, his thought process and thought content were normal, and there were no suicidal or homicidal ideations. He was oriented to person, place, and time and his insight, judgement, and impulse control were fair. With regard to social and industrial functioning, it was noted that the Veteran spent most of his time at home watching television and mainly socialized with his wife and children. A Global Assessment of Functioning (GAF) score of 55 was assigned. The Global Assessment of Functioning is a scale reflecting the subject's psychological, social, and occupational functioning. Carpenter v. Brown, 8 Vet. App. 240 (1995). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (few friends, conflicts with peers or co-workers). See American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (DSM- IV) (4th Ed.). The examiner opined that the Veteran had moderate PTSD symptoms which did not prevent him from being employed. 

VA psychiatric treatment records dated from July 2003 to August 2007 were also obtained and reviewed. Reported symptoms included depression and irritability, anger, anxiety, intrusive thoughts, and recurrent nightmares. He reported that the recent news reports on the Iraq War triggered his PTSD symptoms. On objective evaluation, the Veteran was not in acute physical distress. He had good eye contact, spontaneous, coherent, and relevant speech, and a normal voice tone and rate. His mood was anxious and sad, his affect was appropriate, and he had no gross thought disorder or symptoms of psychosis. However, he reported that since the World Trade Center tragedy, he had experienced recurrent flashbacks and had intrusive thoughts of combat experiences. He claimed that recurrent nightmares were accompanied by night sweats and tachycardia. He denied any suicidal or homicidal ideations. He had good impulse control and good past and recent memory. He was oriented to person, place, and time. GAF scores ranged from 51 to 41. A GAF score of 41-50 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

In an addendum opinion dated in September 2014, a VA examiner determined that prior to 2007, in terms of psychiatric health alone, the Veteran's current level of psychiatric disability would not preclude sedentary employment with limited social contact where tasks were straight forward. Examples included secretarial work and factory work with repetitive tasks. The examiner noted that the Veteran's last occupation was with the U.S. Postal Service in customer service, which ended up causing problems because could not cope with customers and their demands. However, another position with the postal service which would have required less customer service, such as sorting mail, would probably have suited the Veteran's psychiatric symptoms better. 

Thus, based on the above, the Board finds the evidence to be in relative equipoise between the criteria for 50 and 70 percent ratings. While the Veteran had worked for many years following service and maintained a stable home and family life, his PTSD also resulted in a depressed mood, heightened irritability, and recurrent nightmares, as well as diminishment of his enjoyment of social and familial settings. He had also reported that following the events of September 11, he experienced recurrent flashbacks, had intrusive thoughts of combat experiences, and otherwise reported an overall increase in his PTSD symptomatology. Thus, in light of 38 C.F.R. §§ 4.3 and 4.7, a 70 percent rating is awarded for the period prior to August 29, 20007. 

Considering next entitlement to a disability rating in excess of 70 percent for this period, the Board finds the preponderance of the evidence to be against such an award. The Board has considered the VA examination report, as well as VA outpatient treatment records for the period. After review of all evidence, both lay and medical, the Board concludes that the record does not reflect that the service-connected PTSD has been manifested by symptoms of such severity to warrant an evaluation in excess of 70 percent at any time prior to August 29, 2007. 

At no point since the initial grant of service connection does the evidence of record reflect symptoms that resulted in total occupational and social impairment. The Veteran's PTSD has not been manifested by symptoms analogous in severity to gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. To the contrary, the evidence of record shows that the Veteran has, at all times of record, been alert and fully oriented, with good hygiene, normal speech, clear and logical thought processes, and generally adequate social interaction. He has denied any current homicidal or suicidal intent or plan, and has no recent history of violence or legal difficulties. At all times of record for the period of issue, the Veteran was able to live on his own, manage his finances and household unassisted, and perform all tasks of daily living. According to the September 2003 VA examination report, the Veteran's symptoms were no more than moderate in nature, according to the examiner, and did not impair employment. Similarly, the 2014 examination suggested that there could be other types of employment the Veteran could have handled. Thus, a disability rating in excess of 70 percent is not warranted at any time during this period. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016); Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017). As the preponderance of the evidence is against the award of an increased rating in excess of 70 percent prior to August 27, 2007, the benefit of the doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991). 


ORDER

A disability rating of 70 percent and no higher prior to August 29, 2007, for PTSD is granted. 


REMAND

A preliminary review of the record reflects that further development is needed on the issue of entitlement to TDIU prior to August 29, 2007.

In the decision above, the Board increased the Veteran's PTSD during this period to 70 percent. A review of the record reflects that during this period the Veteran also was service-connected for diabetes mellitus, rated as 20 percent disabling, peripheral neuropathy of the right leg, rated as 10 percent disabling prior to August2007, peripheral neuropathy of the left leg, rated as 10 percent disabling prior to August 2007, residuals to a wound of the right knee rated as 10 percent disabling, erectile dysfunction rated as noncompensable and a scar of the right calf rated as noncompensable. The Combined rating per 38 C.F.R. § 4.25 is at least 80 percent and the Veteran accordingly meets the schedular criteria of 38 C.F.R. § 4.16(a). 

The Veteran has contending his psychiatric symptoms resulted in concentration and focus problems and led to arguments at work and his peripheral neuropathy resulted in his inability to stand for prolonged periods. He asserts he had to take an early retirement and alleges he is totally unemployable.

While several VA examinations have been obtained, none of the examinations of record consider the combined effect of all of the Veteran's service-connected disabilities. Rather in September 2014, an opinion was obtained that focused on whether the psychiatric symptoms alone would preclude sedentary employment. Another September 2014 opinion focused solely on limitations to employability due only to the residuals of a shell fragment wound to the right lower leg. A third September 2014 opinion only addressed the neuropathy. The Court has held that, in the case of a claim for TDIU, the duty to assist requires that VA obtain an examination which includes an opinion on what effect the service-connected disabilities have on a Veteran's ability to work. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013); Floore v. Shinseki, 26 Vet. App. 376 (2013) (combined effects opinion not required per se, but may be necessary to sufficiently address a TDIU claim). As such, a medical opinion is needed to resolve the issue of entitlement to TDIU. 

Accordingly, these issues are REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination to ascertain the aggregate effect of the Veteran's service-connected disabilities on his ability to secure or follow gainful employment for the period prior to August 29, 2007. In providing this opinion the examiner must discuss the Veteran's education and work history. 

 The claims folder should be made available to the examiner prior to the examination, and a notation to the effect that this review has taken place should be made in the evaluation report. All pertinent symptomatology and findings must be reported in detail. A complete rationale should be given for all opinions and conclusions expressed.

2. Following the completion of the above, and any other development deemed necessary, readjudicate the claim for entitlement to TDIU. If the claim is denied, he should be provided a Supplemental Statement of the Case and an opportunity to respond before the record is returned to the Board for further appellate review.

 The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

 These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B , 7112 (West 2012).




____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs